## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: <br><br> **BRENDA K. JURGENS,** <br><br>    Debtor. | **Case No. 15-60592-7** |
| **GARY MARTIN,** <br><br>    Plaintiff, <br><br> v. <br><br> **BRENDA K. JURGENS,** <br><br>    Defendant. | **Adv. No. 16-00032** |
| **GARY MARTIN,** <br><br>    Plaintiff, <br><br> v. <br><br> **BRENDA K. JURGENS and FIRST AMERICAN TITLE COMPANY OF MONTANA,** <br><br>    Defendants. | **Adv. No. 16-00009** |

### MEMORANDUM OF DECISION

**INTRODUCTION**

On June 30, 2015, Brenda K. Jurgens ("Debtor" or "Defendant") filed a voluntary chapter 13 petition commencing Case No. 15-60592.[1]  At the time of the petition, Debtor was in litigation with her brother, Gary Martin ("Martin" or "Plaintiff"), which is described more completely below.  On November 5, 2015, the bankruptcy case was converted to chapter 7.  Doc. Nos. 124, 125.[2]

Martin and Debtor are two of three children of Alice Jean Martin ("Alice") and John William ("Billy") Martin.  Both parents are deceased.  Alice died on June 23, 2012. Debtor was the Personal Representative of Alice's Estate and, prior to Alice's death, Debtor held Alice's power of attorney.  In 2014, Debtor filed a petition to probate Alice's will in Midland County, Texas (the "Probate Case"), and, in 2015, Martin filed a civil action against Debtor ancillary to the Probate Case (the "Texas Litigation").[3]  The Probate Case and the Texas Litigation were pending when Debtor filed her 2015 bankruptcy petition.  *See* Doc. No. 21 at 6–7, 15, 26.

On October 8, 2015, the Court granted relief from the § 362(a) stay in order to continue the Texas Litigation.  Doc. No. 85.  The Court noted that this litigation involved

---

[1]  Unless otherwise indicated statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, "Rule" citations are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" citations are to the Federal Rules of Civil Procedure.

[2]  Docket entries in the bankruptcy case and those in adversary proceedings are referred to as "Doc. No." and "Adv. Doc. No." respectively.  The Court takes the individual docket numbers from the Clerk's filing stamps on such documents, and page citations are to the pages shown by those filing stamps, not the internal page numbering on the underlying documents.

[3]  The Probate Case was Cause No. P17827 and the Texas Litigation was Case No. CC17920. *See* Adv. No 16-00032 at Adv. Doc. No. 52, Exs. A–D (Probate Case) and Exs. E–J (Texas Litigation).

MEMORANDUM OF DECISION - 2

"state law causes of action for breach of fiduciary duties, conversion, fraud and fraud by non-disclosure, and civil theft liability[.]" *Id.* at 3. It further noted that "Debtor retains whatever claims, defenses and remedies which she may have against [Martin] in [that] nonbankruptcy forum." *Id.* at 4. Further, consistent with the language of the stay relief motion, which conceded that if granted "the stay remains in effect with respect to enforcement of any judgment against Debtor or estate property," the Court held "Movants[4] will have to seek further relief from this Court before enforcing any judgment they might obtain in Texas." *Id.* As noted, the case was converted to chapter 7 a month later, in November 2015.

On February 9, 2016, Martin filed a complaint against Debtor and First American Title Company of Montana, Inc. ("FATCO"), commencing Adv. No. 16-00009, which seeks declaratory relief and the imposition of a constructive trust and equitable lien on Debtor's claimed homestead exemption in real property located at 748 Bumpy Lane, Victor, Ravalli County, Montana (the "Property").[5] Martin also objected to Debtor's claimed exemption in the Property. *See* Doc. No. 174.[6]

---

[4] Martin's co-movant was Victor Properties, LLC.

[5] No affirmative claims were asserted against FATCO. It was named because, in February 2016, the Court approved sale of the Property by the chapter 7 trustee and FATCO was named to facilitate closing and disbursement of proceeds. FATCO was later dismissed. Adv. No. 16-00009-TLM at Adv. Doc. No. 104.

[6] The Court later ordered that the objections to Debtor's claimed exemption in the Property would be held in abeyance until the Texas Litigation was concluded. Doc. No. 230.

On May 20, 2016, Martin filed a complaint against Debtor commencing a second adversary proceeding, Adv. No. 16-00032. It seeks to deny Debtor's discharge under § 727 and to determine the dischargeability of Martin's claims under § 523(a)(4).

The Texas Litigation concluded with entry of an Amended Final Judgment, as discussed in greater detail below.[7] Martin then moved for summary judgment in both adversary proceedings. Debtor, as Defendant in each action, opposes those motions. The instant Decision resolves both summary judgment motions.[8] It will be entered of record in each adversary proceeding along with appropriate orders.

## JURISDICTION

Plaintiff's complaint in Adv. No. 16-00009 affirmatively asserts this Court has jurisdiction under 28 U.S.C. §§ 1334 and that it is a core proceeding under 28 U.S.C. § 157(b). Adv. Doc. No. 1 at 2; *see also* Fed. R. Bankr. P. 7008. Defendant withdrew her earlier objections to this Court's jurisdiction in Adv. No. 16-00009 and expressly consented to entry of final judgment by this Court. Adv. Doc. No. 100.

Plaintiff's complaint in Adv. No. 16-00032, made the same affirmative assertions of this Court's jurisdiction, and Plaintiff and Defendant agreed at pretrial conference that

---

[7] Defendant appealed that judgment, and according to the records of the Texas 11th Circuit Court of Appeals in Case No. 11-18-00316-CV, the appeal was submitted on February 13, 2020, and has not been decided. *See* www.search.txcourts.gov (last visited July 27, 2020). There is no stay pending appeal.

[8] The factual circumstances and litigation positions in these adversary proceedings are closely intertwined. Combining the matters for purposes of resolution of the pending motions eliminates significant repetition that would be required in separate decisions.

the Court has such jurisdiction over Adv. No. 16-00032 as it deals with core matters

under 28 U.S.C. § 157(b).  Adv. Doc. No. 1 at 2; Adv. Doc. No. 40.

## FACTS[9]

### A.   The Probate Case and the Texas Litigation

The parties' mother, Alice, passed away on June 23, 2012.  Prior to her passing,

Defendant held a power of attorney for Alice, and after her passing Defendant was

appointed personal representative of her estate.  On March 19, 2014, Defendant filed an

application for probate, commencing the Probate Case in Midland County, Texas.  Martin

contested the purported will in the Probate Case.

In the Probate Case, the court entered an agreed order on December 5, 2014,

executed by both parties and their counsel, and by Greg Martin, the parties' brother.

Adv. Doc. No. 52-2 ("Agreed Order").  It required Defendant to provide "all property,

estate and financial records of John William (Billy)[10] and Alice Martin, from August 1,

2008 to the present date including without limitation the following categories of

documents[.]"  *Id.* at 1.  It then listed a comprehensive, non-exclusive list of records and

documents including those concerning:  property of the estates that had come into

Defendant's possession as executor or in any other capacity; disposition of such property;

debts of the estate that had been paid or were still owing; property remaining in her

possession; distributive transfers of assets or property by Defendant through pay on death

---

[9]   Unless otherwise indicated references to Adv. Doc. No. are to Adv. No. 16-00032 and the facts
set out below are undisputed based on the pleadings of record and the parties' summary judgment
submissions.

[10]   Billy Martin predeceased Alice.

accounts or other accounts; all powers of attorney; life insurance policies; transfers of estate property made to Defendant or to Greg Martin, or to any other person; and documents and records regarding inventories of estate assets. *Id.* at 1–2.

The Agreed Order also required a mediation within 90 days; set various other deadlines; ordered Defendant to comply with an accounting demand related to Billy Martin's estate by November 22, 2014; and required Defendant's compliance with the ordered document production by January 2, 2015. *Id.*

On March 4, 2015, Martin commenced the Texas Litigation, a civil action ancillary to the Probate Case. His petition alleged Defendant committed fraud, breach of fiduciary duty, conversion, and civil theft, and in addition to seeking damages for such actions, Martin sought any equitable relief the court deemed appropriate. Adv. Doc. No. 52-5.

On June 16, 2015, the Texas court entered a Contempt Order finding Defendant in contempt of court for failure to comply with the Agreed Order. Adv. Doc. No. 52-3. The court assessed a $1,000 fine and sentenced Defendant to 30 days incarceration but withheld that sentence on the condition that she produce full and complete copies of personal depository accounts by June 19, 2015, and comply with all other production under the Agreed Order and under a February 19, 2015 request by Martin for production of documents and records.

On February 24, 2016, the Texas court entered another Contempt Order, Adv. Doc. No. 52-4, following a contempt hearing on January 28, 2016.[11]  It found Defendant in contempt for failure to comply with the Agreed Order "and all of the other Court's orders regarding the production of discovery."  *Id.*  It imposed a $2,500 fine to be paid to Martin before February 17, 2016, and it required Defendant to fully comply with all orders and rulings including production of bank documents by February 17, 2016.  *Id.*

### 1.    The Terminating Sanctions

On June 28, 2017, the Texas court entered its "[Proposed] Order Granting Plaintiff Gary Martin's Motion for Terminating Sanctions and Entry of Default Judgment Against Defendant Brenda Jurgens."  Adv. Doc. No. 52-7.[12]  The court found "Defendant has exhibited a long history of discovery abuse in this action" and detailed a chronology of such abuse spanning from 2014 to 2017.  *Id.* at 2–6.  The court then found and held that Defendant had not fully complied with its orders for production; abused her position as a fiduciary under the power of attorney and as executor of the estates of Billy and Alice Martin; misappropriated funds that would have become part of Alice's estate and other Estate funds to the detriment of Martin and other heirs and beneficiaries; committed fraud and fraud by non-disclosure by making false representations as to the assets of Alice and of the estates of Alice and Billy Martin; misappropriated property, including funds, of

---

[11]  This order was signed by the court on January 28, 2016, the date of the hearing, but entered of record on February 24, 2016, according to the clerk's stamp.

[12]  Defendant raises arguments about this being a form of order "proposed" by Martin and it does appear from a certificate of service, *id.* at 12, it was proposed by Martin's counsel and served on the court and Defendant.  However, there is no factual dispute that the Texas court entered this order as presented.

Alice and those estates "with the intent to deprive others, including [Martin], of that property[;]" converted and misappropriated substantial assets of Alice and those estates to her own use and enjoyment "including, but not limited to, improving, maintaining and disposing of liens of Defendants [*sic*] former real property located in Ravalli County, Montana;" that as a result of such fraud and misappropriation she was unjustly enriched and "[i]t would be inequitable for Defendant to retain any portion of her claimed homestead exemption that resulted from his [*sic*] misappropriation of funds[;]" and, finally, that "throughout this and the ancillary probate action, Defendant has engaged in systematic effort to thwart the discovery process and flagrantly abuse the judicial process with false statements and repeated failures to comply with the Texas Rules of Civil Procedure" which justified "[t]he imposition of sanctions pursuant to T.R.C.P. 215[.]" *Id.* at 6–7.

The court then outlined over several additional pages the reasons for imposing such sanctions, and explained that such sanctions had a direct relationship to Defendant's "offensive conduct," "dilatory and obfuscatory tactics," "false and misleading statements" and "other misrepresentations," ultimately concluding that "[t]he imposition of death penalty sanctions is directly in relation to Defendant's misconduct" and that "lesser, yet extremely severe, contempt and sanction orders" failed to deter her "from engaging in . . . misconduct nor secured her required compliance[.]"  *Id.* at 7–10.  It concluded that "striking Defendant's pleadings is appropriate and just" and that Defendant's misconduct "justifies a presumption that her defenses lack merit."  *Id.* at 10.

The decretal portion of the Order struck Defendant's pleadings including answers and affirmative defenses; granted the relief sought in Martin's petition; determined that judgment would be entered for Martin at a subsequent prove-up hearing which would include all principal, interest, and reasonable and necessary attorneys' fees; prohibited Defendant from offering testimony or evidence on expenses paid from Alice's account absent "independent and disinterested witness corroboration or definitive documentary proof" that they were for Alice's direct benefit; and imposed a "constructive trust" in favor of Martin on Defendant's assets including the real property in Ravalli County, Montana.  *Id.* at 11.

An Amended Final Judgment was entered on August 14, 2018.  Adv. Doc. No. 52-9.  It follows the June 27, 2018 Order's conclusions and holdings striking Defendant's pleadings, awarding Martin the relief requested in his petition, and imposing a constructive trust on all Defendant's assets including the Property in Ravalli County.  *Id.* at 1–2.  It established damages and awarded Martin judgment in the amount of $353,000 derived from amounts Defendant was unable to account for, and awarded Alice's estate damages of $79,978.38 representing 50% of amounts received by Defendant from specified estate assets.  It did not award "exemplary damages."  *Id.* at 2.  It awarded Martin judgment in the amount of $341,418 for attorneys' fees.  *Id.*  And it held that, by reason of Defendant's fraud, any damages resulting from the fraud "shall be nondischargeable" in any bankruptcy proceeding of Defendant.  *Id.*[13]

---

[13]  The Judgment, *id.* at 1, and the prior Order, Adv. Doc. No. 52-7 at 11, both stated: "Defendant committed fraud upon Defendant [*sic*, Plaintiff] and any damages resulting therefrom shall be

On October 24, 2018, the Texas court issued "Findings of Fact and Conclusions of Law Relating to Amended Final Judgment" of August 14, 2018.  Adv. Doc. No. 52-10 (the "FF/CL").[14]  They restate, at times in greater or more complete detail, the factual and legal findings that were made in the Order granting terminating sanctions and the Final Amended Judgment.

In support of the terminating sanctions, the Texas court stated:

Defendant significantly interfered with this Court's legitimate exercise of its core functions of hearing full and accurate evidence and deciding issues of fact and law.  The Court's prior order striking Defendant's pleadings bears a direct relationship to Defendant's offensive conduct in that each of the causes of action plead involves whether Defendant, in her fiduciary capacity, improperly used Alice Jean Martin's assets for Defendant's own benefit and to the detriment of Alice Jean Martin.  Therefore, each expenditure made by Defendant from Alice Jean Martin's assets is at issue.  Defendant had and has sole control over the information and documentation of Alice Jean Martin's estate and accounts as power of attorney for her mother and executor of her mother's estate.

Adv. Doc. No. 52-10 at 7–8.

Defendant also testified extensively in her deposition in this matter that several expenditures she made to a law firm in Montana were for Alice Jean Martin's benefit because those services allegedly related to securing legal advice about moving Alice Jean Martin to Montana.  The attorney at that law

---

nondischargeable in any proceeding under Title 11 of the United States Code."  This aspect of the rulings by the Midland County, Texas court are jurisdictionally problematic.  *See* Adv. Doc. No. 34 at 7 (May 3, 2019 (clarifying that the Texas court lacked the jurisdiction to make that finding or reach that conclusion, and that exclusive jurisdiction to address discharge and dischargeability under § 523(a)(2), (4) and (6) rests with the bankruptcy court).  Even Plaintiff recognizes this, stating "*While only this [Bankruptcy] Court can make such a determination*, it is telling that the Texas Court specifically identified nondischargeability as a consequence of Defendant's sanction [*sic*]."  *See* Adv. Doc. No. 50 (brief) at 12, n. 3 (emphasis added).  Thus the Court gives no weight to this finding and will make its own conclusions as to dischargeability.

[14]  The docket of the Texas 11th Circuit Court of Appeals, Case No. 11-18-00316-CV, indicates that on September. 4, 2018, Defendant requested the trial court enter such findings and conclusions.  *See* www.search.txcourts.gov (last visited July 27, 2020).

firm testified under oath that his law firm had not done any work for Defendant relating to Alice Jean Martin.

*Id.* at 9.

23.     The Court finds that Defendant abused her position as a fiduciary, both as power of attorney for Alice Jean Martin and also as the executor for the Estates of Alice Jean Martin and Billy Martin.  Funds belonging to Alice Jean Martin, which would ultimately have become part of her estate and other Estate funds were misappropriated for Defendant's own benefit and to the detriment of Plaintiff and other heirs and beneficiaries of Alice Jean Martin and Billy Martin.

24.     The Court finds that Defendant committed fraud and fraud by non-disclosure by knowingly making false representations about the assets of Alice Jean Martin and the Estates of Alice Jean Martin and Billy Martin.

25.     The Court finds that Defendant knowingly misappropriated property, including but not limited to funds, belonging to Alice Jean Martin and the Estates of Alice Jean Martin and Billy Martin with the intent to deprive others, including Plaintiff, of that property.  Defendant converted and misappropriated substantial assets belonging to Alice Jean Martin and to the Estates of Alice Jean Martin and Billy Martin to her own use and enjoyment including, but not limited to, improving, maintaining and disposing of liens of Defendants former real property located in Ravalli County, Montana

26.     The Court finds that as a result of Defendant's fraud and misappropriation of property, Defendant was unjustly enriched.  It would be inequitable for Defendant to retain any portion of her claimed homestead exemption that resulted from his [*sic*, "her" or "this"] misappropriation of funds from Alice Jean Martin or the Estate of Alice Jean Martin and Billy Martin.

*Id.* at 11–12.

## DISCUSSION AND DISPOSITION

### A.     Summary Judgment Authorities

Summary judgment authority and standards are clear.  The Bankruptcy Court for

the District of Montana has held:

MEMORANDUM OF DECISION - 11

Civil Rule 56(a), incorporated in this adversary proceeding by Rule 7056, states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *In re Aquaslide "N" Dive Corp.,* 85 B.R. 545, 547 (9th Cir. BAP 1987)). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 608 (9th Cir. 1985). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)]. Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547.

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986).

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. Additionally, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 861 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). And all justifiable inferences must be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

Consistent with Mont. LBR 7056-1(a), Plaintiff's Motion in each adversary

proceeding is supported by a Statement of Uncontroverted Facts and related exhibits—

Adv. No. 16-00009 at Adv. Doc. Nos. 114, 115; Adv. No. 16-00032 at Adv. Doc. Nos. 51, 52—and Defendant's objections are accompanied by a Statement of Genuine Issues of Material Fact and Defendant's Declaration—Adv. No. 16-00009 at Adv. Doc. Nos. 123, 124; Adv. No. 16-00032 at Adv. Doc. Nos. 60, 61.[15]

**B.     Issue Preclusion and Full Faith and Credit**

Plaintiff asserts that the adjudication by the Texas court is on the merits and was fully and fairly litigated.  Defendant disagrees and argues the Court cannot use a "default judgment" as a predicate for application of the doctrine of issue preclusion.

Issue preclusion or collateral estoppel may apply in nondischargeability litigation. *See Grogan v. Garner*, 498 U.S. 279, 284–85 (1991); *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003).  As explained in *Herrera v. Scott (In re Scott)*, 588 B.R. 122, 131 (Bankr. D. Idaho 2018):

> As a matter of full faith and credit, 28 U.S.C. § 1738 requires federal courts to apply the pertinent state's issue preclusion laws to determine whether relitigation of an issue is precluded in a subsequent federal action.  The party asserting issue preclusion bears the burden of proving its applicability under state law.  *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).  The party must also provide "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.  *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*. 100 F.3d 110 (9th Cir. 1996).  Any reasonable doubts as to what was decided by a prior judgment should be resolved against a finding of issue preclusion. *Id.*

In other words, "[f]ederal courts refer to the preclusion law of the state in which the judgment was rendered to determine the preclusive effect of a state court judgment.

---

[15] Defendant's Declarations and the attached exhibits are identical in the two adversary proceedings.

*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985); *Diruzza v. City of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003)." *Khionidi v. Cummins-Cobb* (*In re Cummins-Cobb*), 2020 WL 634140, *5 (Bankr. C.D. Cal. Feb. 10, 2020).

Here, the underlying judgment comes from Texas, and issue preclusion "under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit." *Helvetia Asset Recovery, Inc. v. Kahn (In re Kahn)*, 533 B.R. 576, 584 (Bankr. W.D. Tex. 2015).[16] More specifically, Texas law precludes a party from relitigating an issue if "(1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2)

---

[16] Plaintiff asserts, and Defendant does not specifically contradict, that the Texas judgment is final for preclusion purposes despite the existence of an appeal. *See* Adv. Doc. No. 50 at 5. Plaintiff is correct. *See e.g., In re Healey*, 2017 WL 4863014 (Bankr. E.D. Tex. Oct. 26, 2017) (citing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986), in which the Texas Supreme Court adopted the Restatement (Second) of Judgments § 13 and held that a judgment is final despite the existence of an appeal unless the appeal actually consists of a trial de novo). Defendant also emphasizes the pending Texas appeal, implicitly arguing that such an appeal should negate any preclusive effect of the judgment. The Court appreciates the appeal is still pending decision. However, a pending appeal does not mean the judgment and decision should be accorded any less effect. As noted in *Frye v. Excelsior College (In re Frye)*, 2008 WL 8444822, *11 (9th Cir. BAP Aug. 19, 2008):

> Where a judgment is based on an earlier judgment and issue preclusion applies, the aggrieved party may seek relief from the later judgment through Fed. R. Civ. P. 60(b)(5) (providing that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) . . .; it is based on an earlier judgment that has been reversed or vacated"); *Tomlin v. McDaniel*, 865 F.2d 209, 210–11 (9th Cir. 1989). Thus, the pendency of the Ninth Circuit appeal was not an impediment to imposition of preclusion, and the bankruptcy court did not abuse its discretion in applying issue preclusion in entering summary judgment determining that Frye's debts arising out of the District Court Judgment were excepted from discharge.

Since Defendant did not post a supersedeas bond nor obtain a stay pending appeal, the judgment is final and may be considered for preclusion purposes.

those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case." *Id.*; *see also Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 307 (5th Cir. 2007); *Khionidi*, 2020 WL 634140, at *6.

### C.    Terminating (or "Death Penalty") Sanctions

As noted, Defendant argues preclusion cannot apply to the Amended Final Judgment at issue here because it was a "default" judgment and there was no determination on the merits only a resolution of a discovery dispute.  Plaintiff disagrees and, though referring to the result of the Texas Litigation as a death penalty sanction, argues that it is a ruling under Texas law that can be given preclusive effect.[17]

According to the Texas Court of Appeals:

> A death penalty sanction is any sanction that adjudicates a claim or defense and precludes the presentation of the claim or defense on the merits. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (orig. proceeding). Any sanction that is case-determinative may constitute a death penalty sanction.  *GTE Comm. Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993) (orig. proceeding).

*Duncan v. Park Place Motorcars, LTD*, 2020 WL 2847530, *6 (Texas Ct. App. June 2, 2020).  The court in *Duncan* also stated:

> In the context of discovery abuse, death penalty sanctions encompass the limitation of the power of the trial court to dismiss an action without allowing a hearing on the merits.  *TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding). In *TransAmerican National Gas Corporation*, the Texas Supreme Court held death penalty sanctions may

---

[17]  Under Texas Rule of Civil Procedure 215.2(b), a trial court is authorized to impose sanctions if it finds a party is abusing the discovery process, and permissible sanctions include disallowing further discovery, striking the offending party's pleadings, refusing to allow the offending party to support or oppose designated claims or defenses, prohibiting the offending party from introducing designated matters into evidence, charging all or any portion of the discovery expenses or taxable court costs against the offending party, dismissing the action with or without prejudice, rendering judgment by default, and entering an order that designated facts shall be taken to be established.

not be applied just to punish or deter bad behavior "absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.* "Bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory or malicious purpose." *Armstrong v. Collin Cty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.-Dallas 2007, no pet.). Because the effect of death penalty sanctions is to dispose of claims or defenses not on their merits but on how a party conducts discovery, a trial court should impose case-determinative sanctions only in exceptional cases when circumstances clearly justify them and it is apparent that no lesser sanctions would promote compliance with the rules. *GTE Communications Sys. Corp.*, 856 S.W.2d at 730. The offending party's discovery abuse must be such that, despite imposition of lesser sanctions, the court may presume the party's claims or defenses lack merit and it would be unjust to permit the party to present the substance of that position to the court. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918. *"[I]f a party refuses to produce material evidence despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." Id.* (emphasis added).

*Id.* at *7. *See also In re Sw. Pub. Serv. Co.*, 2020 WL 1887762, *12–13 (Tex. Ct. App. Apr. 16, 2020) ("'Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hinderance of the discovery process justifies a presumption that its claims or defenses lack merit.'" (citations omitted)).

Thus, death penalty sanctions resulting in default judgment are not the same as a default judgment based on a defendant's failure to answer a complaint. While not a decision on the merits, it is a decision that stems from a defendant's egregious conduct during discovery or in the case.

As noted in *In re Sims*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012), although a party may not substantively litigate the issues, a post-answer, sanctions default judgment may still satisfy the fully and fairly litigated element under Texas law. *See also Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1205–06 (5th Cir. 1996) (analyzing and

approving preclusion principles in the face of a death-penalty sanction default and Texas law).

Consistent with the death-penalty sanction authority, the court in the Texas Litigation, entered the "Amended Final Judgment" stating that it had granted Martin's motion for terminating sanctions and entry of default judgment on June 27, 2018. Under that order and the Amended Final Judgment, all pleadings by Defendant, including answers and affirmative defenses were stricken, and all the relief sought by Martin in the Second Amended Petition was granted. Also, a constructive trust was imposed in favor of Martin on the assets of Defendant including the Property in Ravalli County, Montana, and the damages and attorneys' fees, as itemized earlier in this Decision, were imposed.

Subsequently, the Texas FF/CL, Adv. Doc. No. 52-10, were entered. The findings include a litany of Defendant's discovery abuse from 2014 through 2017. The court specifically found reasons why the sanctions under Tex. R. Civ. P. 215 should, and would, be entered, and that the "imposition of death penalty sanctions was directly in relation to Defendant's misconduct." *Id.* at 9. It expressly found Defendant abused her position as a fiduciary under both the power of attorney and as executor, committed active fraud and fraud by non-disclosure, and misappropriated funds belonging to Alice's estate including taking and using such funds to improve, maintain, and dispose of liens on the Property. *Id.* at 11–12.

Given the record, and consistent with *Sims*, the Court concludes the death penalty default judgment entered in the Texas Litigation satisfies the full and fair litigation

element and collateral estoppel may apply to the current litigation to the extent the facts were at issue and essential to that litigation.

### D.   Adv. No. 16-00032-TLM

#### 1.   Contentions of the Parties

Plaintiff contends summary judgment is appropriate under § 523(a)(4), because the Texas court's findings concerning Defendant's breach of her fiduciary duties, both under the power of attorney and subsequently as executor of the probate estate, meet the "fraud or defalcation while acting in a fiduciary capacity" standards required under § 523(a)(4) and applicable precedent.

Plaintiff also contends summary judgment is appropriate under § 727(a)(4) because Defendant "knowingly or fraudulently, in or in connection with the case, made a false oath or account." Plaintiff points to statements made at the § 341(a) meeting of creditors, and omissions from or allegedly false statements in Defendant's bankruptcy filings including her schedules and statement of financial affairs. These contentions focus on (a) Defendant's valuation of her interest in WestPac Development, LLC ("WestPac"); (b) assertions in her statement of financial affairs regarding the absence of gifts or transfers to her close friends or relatives when certain transfers were made to Defendant's daughter and son-in-law; (c) alleged misrepresentations regarding income she was to receive from her daughter and son-in-law; and (d) alleged misrepresentations at a 2004 examination about her use of Alice's estate funds to pay Montana counsel, allegedly for advice about moving Alice back to Montana, when that firm's attorney later testified that the firm was hired to address a construction lien on the Property. Plaintiff

argues also that Defendant in December 2015 testified she had not gifted or transferred any property in the four years prior to bankruptcy, but in January 2016 testimony admitted gifting her daughter and son-in-law $10,000 each in the summer of 2012, a representation confirmed by the testimony of the recipients in their 2004 examinations.

Defendant contends, in regard to the § 523(a)(4) assertions, that the definition of a fiduciary is narrow and a question of federal law, and unmet in this case. She also finds material the fact that the Texas court, in entering its various orders, did not award any exemplary or punitive damages though they had been requested by Martin.

As to the § 727(a)(4)(A) contentions, Defendant argues that her schedules and other disclosures as a whole negate the assertion that her valuation of her interest in WestPac was false much less knowingly and fraudulently made. Defendant argues that her nondisclosure of gifts to family members was accurate, not false, because the transfers were made in 2012, the bankruptcy case was filed in 2015, and the statement of financial affairs required disclosure of gifts only if made within 2 years. She acknowledges answering "no" to the question of transfers to family members within 4 years at the § 341(a) meeting, but contends it was a simple error and was later conceded in a declaration she made.[18]

### 2.      Nondischargeable Debt under § 523(a)(4)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" *Cal-Micro, Inc. v. Cantrell*

---

[18] She also argues that the trustee's decision not to commence an action to avoid and recover the transfers "demonstrates the non-materiality of the statement." Adv. Doc. No. 59 at 12.

*(In re Cantrell)*, 329 F.3d 1119 (9th Cir. 2003), held that, for purposes of § 523(a)(4), "[t]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Id.* at 1125 (citing *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996)).  State law is to be referenced in order to ascertain if the requisite fiduciary relationship existed.  *Id.*; *see also Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 379 (9th Cir. BAP 2011).

Defendant's exercise of the power of attorney prior to Alice's death qualifies.  *See Healey v. Healey (In re Healey)*, 2018 WL 4808362, *6–7 (Bankr. E.D. Tex. Oct. 2, 2018) (determining in a § 523(a)(4) case that "[u]nder Texas law, '[A] power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law.'")[19] *Healey* recognized that such fiduciary relationship would not *ipso facto* satisfy the fiduciary capacity requirement under § 523(a)(4), but found that the duties and control exercised by an executor were "tantamount to those of a trustee of an express trust," and thus was sufficient to establish the necessary trust-type relationship.  *Id.*  The position of executor of Alice's and Billy's Estates is similarly an express fiduciary position.  *Swait v. Newman (In re Newman)*, 2019 WL 989483, *11 (Bankr. E.D. Tex. Feb. 26, 2019) (applying Kansas law); *Hollis v. Hollis (In re Hollis)*, 2011 WL 1168403, *12 and *16 (Bankr. E.D. Tex. Mar. 29, 2011) (holding that the executor of probate estate was a fiduciary under Texas law and violation of those fiduciary duties was sufficient to deny a debtor a discharge under § 523(a)(4)).

---

[19]  As in the instant case, *Healey* involved application of issue preclusion (collateral estoppel) in a § 523(a)(4) adversary proceeding based on an underlying Texas state court judgment.

Here, the FF/CL entered by the Texas court relevant to § 523(a)(4) liability are clear and unambiguous.

> The Court finds that Defendant abused her position as a fiduciary, both as power of attorney for Alice Jean Martin and also as the executor for the Estates of Alice Jean Martin and Billy Martin.  Funds belonging to Alice Jean Martin, which would ultimately have become part of her estate and other Estate funds were misappropriated for Defendant's own benefit and to the detriment of Plaintiff and other heirs and beneficiaries of Alice Jean Martin and Billy Martin.

> The Court finds that Defendant committed fraud and fraud by non-disclosure by knowingly making false representations about the assets of Alice Jean Martin and the Estates of Alice Jean Martin and Billy Martin.

> The Court finds that Defendant knowingly misappropriated property, including but not limited to funds, belonging to Alice Jean Martin and the Estates of Alice Jean Martin and Billy Martin with the intent to deprive others, including Plaintiff, of that property.  Defendant converted and misappropriated substantial assets belonging to Alice Jean Martin and to the Estates of Alice Jean Martin and Billy Martin to her own use and enjoyment including, but not limited to, improving, maintaining and disposing of liens of Defendants former real property located in Ravalli County, Montana.

Adv. No. 16-00032-TLM at Adv. Doc. No. 52-10, at 11–12.

The Texas court found Defendant's conduct caused injury and damages to Plaintiff and to the Estates of Alice Jean Martin and Billy Martin.  *Id.* at 12–13.  It concluded damages of $79,978.39 were suffered by, and had to be paid to, the Estates. *Id.* at 13–14.  It further concluded that damages of $353,000, derived from $292,000 and $61,000 that Defendant could not account for, were suffered by and payable to Plaintiff. *Id.* at 14.  And it further awarded Plaintiff attorneys' fees of $341,418.00.  *Id.*

The Court has fully considered Defendant's arguments regarding the imposition of summary judgment on the claims under § 523(a)(4) and finds them unpersuasive.[20] Plaintiff's Motion will be granted and summary judgment will be entered, establishing the damages as found by the Texas court are nondischargeable under § 523(a)(4).

Liability for Plaintiff's attorneys' fees in the Texas Litigation are also nondischargeable. *Vrana v. Thornhill (In re Thornhill)*, 2019 WL 4795601, *9 (Bankr. E.D. Tex. Sept. 30, 2019) (quoting *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) ("Once it is established that specific money or property has been obtained by fraud, … 'any debt' arising therefrom is excepted from discharge."). *See also Correia–Sasser v. Rogone (In re Correia-Sasser)*, 2014 WL 4090837, *13 (9th Cir. BAP Aug. 19, 2014) (applying *Cohen* to § 523(a)(4)); *Healey*, 2018 WL 4808362 at *8 ("When the primary debt is nondischargeable . . ., the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable.") (citing *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996)).

---

[20] Defendant argues, *inter alia*, that the absence of an award of punitive damages is a critical factor and establishes that the Texas court decision is not entitled to issue preclusive effect. *See* Adv. Doc. No. 59 at 6–8 (discussing *Cantrell*, *supra*, 329 F.3d 1119, and its discussion, *id.* at 1125–28, of *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240 (9th Cir. 2001) (noting that *Harmon* did not involve punitive damages and in contrast Cal-Micro was awarded $10,000 in punitive damages)). This ignores the numerous express findings and conclusions made by the Texas court as to Defendant's conduct. *See* Doc. Nos. 52-7 at 6–10; 52-10 at 7–9, 11–13. Here, the Texas court was not faced with a pre-answer "default judgment" for failure to appear but, rather, a default resulting from terminating sanctions entered based on Defendant's conduct after appearing; and there were specific findings of the Texas court as to fraudulent conduct and misappropriation; and such findings do satisfy the standards of *Bullock v. BankChampaign*, 569 U.S. 267 (2013).

### 3.    Denial of Discharge under § 727(a)(4)(A)

Plaintiff also contends Debtor's discharge should be denied in full under § 727(a)(4)(A).  That proposition relies upon inconsistencies between Defendant's depositions in the Texas Litigation and her schedules, statement of financial affairs, and § 341(a) testimony in her bankruptcy case.  Having carefully considered those submissions and arguments, and Defendant's responsive arguments, the Court concludes that summary judgment on this aspect of the dispute would be improper.  As stated in *Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL 2895428, *2 (Bankr. D. Idaho June 25, 2014):

> The Court has carefully reviewed the voluminous documents submitted regarding the [competing] motions for summary judgment.  Based on that review, the Court determines that to grant summary judgment to either party would require the Court to make impermissible credibility determinations, to make inappropriate inferences favoring the respective movant, or to disregard information provided by the opponent that creates disputed facts.  Further, in certain instances, the moving party failed to carry its burden by establishing it was entitled to judgment as a matter of law.

*Id.* at *2.  The Court also in that decision noted that, for prudential reasons, it would not elaborate on specific details of its review and analysis of the ungranted motion for summary judgment:

> Much as the case where a motion for summary judgment is denied, a court that will later conduct a bench trial in that same cause is well advised to keep discussion of facts in its ruling to a minimum, thus avoiding commentary or characterization that might lead the parties to assume (erroneously, of course) that decisions have been reached on the facts prior to the presentation of evidence.

*Id.* at *3 (quoting *Zazzali v. Goldsmith (In re DBSI Inc.),* 2013 WL 1498365, *5 (Bankr. D. Idaho Apr. 11, 2013) (discussing denial of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c)).

These statements are apropos here, and the Court will not specify issues which lead it to the conclusion that the § 727(a)(4)(A) cause is not appropriate for summary judgment at this time.

### E.    Adv. No. 16-00009-TLM[21]

In this adversary proceeding, Martin seeks a declaratory judgment; imposition of a constructive trust on the funds remaining from the sale of the Ravalli County, Montana Property; and a ruling denying Defendant's claimed homestead exemption on that Property.

### 1.    History and Events Regarding the Property

Defendant and her then-husband, Edwin Day ("Day") received a Warranty Deed on the Property as joint tenants on August 29, 1995.  Adv. Doc. No. 115-6.  On November 29, 2007, Lolo Peak Landscaping & Supply, LLC ("LPLS") placed a construction lien on the Property in the amount of $54,156.97.  Adv. Doc. No. 115-26.  In 2008, LPLS filed a state court complaint for damages and for judicial foreclosure of its lien.  Adv. Doc. No. 115-30 (the Ravalli County District Court docket for Case No. DV-41-2008-0000269-DS).  Trent Baker, a Montana attorney with Datsopoulos, MacDonald

---

[21]  References to Adv.Doc. No. hereafter are to the filings in Adv. No. 16-00009.  And as explained in note 2, the Court takes the individual docket numbers from the Clerk's filing stamps on such documents, and page citations are to the pages reflected by those filing stamps, not the internal page numbering on the underlying documents.

& Lind, initially represented Defendant in the LPLS construction lien foreclosure lawsuit. Adv. Doc. No. 115-14 at 7 (March 10, 2016 transcript).  Baker testified at a March 10, 2016 bankruptcy hearing that three checks received from Defendant totaling approximately $9,000 were for services regarding defense of the construction lien litigation.  *Id.* at 12–13.  He testified that none of the invoiced services involved assisting or advising Defendant regarding moving Alice to Montana.  *Id.*  Defendant had earlier testified in a deposition in February 2016 that payments to that firm were for advice in connection with moving Alice to Montana.  Adv. Doc. No. 115-38 at 2–4.[22]

On April 12, 2011, Defendant deposited into her personal account a $60,000 check dated February 12, 2011, that she had written on Alice's account and made payable to herself.  Adv. Doc. No. 115-27 at 1.  On April 14, 2011, Defendant prepared a check in the amount of $50,000 on her personal account, payable to attorney Gail Goheen, who also represented Defendant in the LPLS litigation.  *Id.* at 2.  Judgment was entered in the construction lien lawsuit in June 2011, and the same was dismissed on stipulation of the parties in July 2011 following a satisfaction of judgment.  Doc. No. 115-30 at 8.

In addition to the issues with the Property related to the removal of the LPLS construction lien, Defendant's husband, Day, received a divorce judgment and proceeded with foreclosure proceedings against the Property based on an asserted judgment lien. On June 27, 2012, the parties entered a stipulation in the divorce action which held the foreclosure proceedings in abeyance on the condition that Defendant "immediately"

---

[22] *See also* Adv. Doc. No. 115-13 at 9 (Texas court FF/CL outlining findings that Defendant gave false testimony regarding payments to the Montana firm being related to moving Alice to Montana).

tender $80,000 to Day's counsel in partial satisfaction of judgment and make an additional payment of $70,000 no later than September 27, 2012, which would result in full satisfaction of the judgment.  Adv. Doc. No. 115-24 at 1–2.  On that same day, Defendant wrote a $65,000 check to herself on Alice Jean Martin's account and deposited it into her personal account, Adv. Doc. No. 115-22, and then wrote Day an $80,000 check, Adv. Doc. No. 115-23.  The payment to Day resulted in entry of a Partial Satisfaction of Judgment.  Adv. Doc. No. 115-25.

These events preceded the commencement of the Probate Case in March 2014, and Defendant's bankruptcy filing in June 2015.  In her bankruptcy, Defendant claimed a $250,000 homestead exemption in the Ravalli County Property under Montana law.  Adv. Doc. No. 115-16 at 9.[23]  Martin objected to that exemption and filed this adversary proceeding.  Both the objection to exemption and the adversary proceeding were held in abeyance pending the outcome of the Texas Litigation.  *See* Adv. Doc. Nos. 115-33; 115-34 (Court orders).

In February 2016, the Property was sold by the chapter 7 trustee for $1,500,000.  Adv. Doc. No. 115-20.  After paying the costs and expenses of sale, and prior secured encumbrances, $367,439.26 remained for the estate.  Adv. Doc. No. 115-21.  The trustee's "interim final report," Adv. Doc. No. 115-35, reflects payment of those secured claims, *id.* at 2, related administrative expenses and payment of priority unsecured claims, *id.* at 3, and distributions to unsecured creditors, *id.* at 4.  Martin is among those

---

[23] Defendant filed a declaration of homestead on April 25, 2011.  Adv. Doc. No. 115-7.  And Defendant filed another declaration of homestead on November 18, 2015.  Adv. Doc. No. 115-8.

MEMORANDUM OF DECISION - 26

unsecured creditors and received $246,558.42 on his allowed $774,396.38 proof of claim.

*Id.*

As noted, the Texas court made several findings in its FF/CL, Adv. Doc. No. 115-13, which are entitled to preclusive effect.  Those most relevant to the Property and homestead litigation include:

> 23.   The Court finds that Defendant abused her position as a fiduciary, both as power of attorney for Alice Jean Martin and also as the executor for the Estates of Alice Jean Martin and Billy Martin.  Funds belonging to Alice Jean Martin, which ultimately would have become part of her estate and other Estate funds were misappropriated for Defendant's own benefit and to the detriment of Plaintiff and other heirs and beneficiaries of Alice Jean Martin and Billy Martin.
>
> . . .
>
> 25.   The Court finds that Defendant knowingly misappropriated property, including but not limited to funds, belonging to Alice Jean Martin and the Estates of Alice Jean Martin and Billy Martin with the intent to deprive others, including Plaintiff, of that property.  Defendant converted and misappropriated substantial assets belonging to Alice Jean Martin and to the Estates of Alice Jean and Billy Martin to her own use and enjoyment including, but not limited to, improving, maintaining and disposing of liens of Defendants former real property located in Ravalli County, Montana.
>
> 26.   The Court finds that as a result of Defendant's fraud and misappropriation of property, Defendant was unjustly enriched.  It would be inequitable for Defendant to retain any portion of her claimed homestead exemption that resulted from his [*sic*] misappropriation of funds from Alice Jean Martin or the Estates of Alice Jean Martin and Billy Martin.

*Id.* at 11–12.

The Texas court also reached the following conclusions:

> 30.   **Constructive Trust and Unjust Enrichment**.   Because of the aforementioned breach of a special trust, fiduciary relationship, and actual fraud, the Defendant was unjustly enriched.  Specifically, the Defendant converted and misappropriated substantial assets to her own use and enjoyment, including, but not limited to, improving, maintaining and

disposing of liens on the Defendant's Montana property ('Property') to save the Property from foreclosure.

31.     The Defendant claimed a homestead exemption on the Property in her Chapter 7 bankruptcy proceeding.  Plaintiff objected to that exemption claiming that the Defendant's claimed exemption was funded with misappropriated funds and that the Defendant should not be entitled to shield such funds with the exemption.  This Court understand [*sic*] that the bankruptcy court ordered that these homestead funds not be distributed to the Defendant for at least six months, after which the bankruptcy court will hold a status conference on this litigation.  This Court concludes that it would be inequitable for the Defendant to retain any portion of her claimed homestead exemption that resulted from her misappropriation of funds from Alice Jean Martin or the Estate and Defendant would be unjustly enriched to the detriment of the heirs and beneficiaries of the Estate.

*Id.* at 12–13.

## 2.     Contentions of the Parties

Martin seeks through his motion for summary judgment a declaratory judgment to the effect that a constructive trust arose from 2008 forward based on Defendant's conduct and the Texas court's Amended Final Judgment, FF/CL, and its related rulings regarding that conduct.  Martin notes that Defendant failed to provide any proof that the misappropriated funds did not finance her claimed interest in and exemption on the Property (a result driven in part by the Texas court having entered the death penalty sanctions for Defendant's discovery conduct) and, further, asserting that her homestead exemption should be denied in its entirety.  The first argument rests on the proposition that the Texas judgment should be given "full faith and credit" under 28 U.S.C. § 1738, and that Defendant is collaterally estopped from relitigating those issues.  Martin argues that an equitable lien and/or a constructive trust should be imposed on the funds remaining from the sale of the Property based on the FF/CL of the Texas court which

establish Defendant used funds of the Estate of Alice Jean Martin in order to pay off liens on her Montana property.  The second argument seeks denial of Defendant's ability to claim a homestead exemption due to her fraudulent conduct.

Defendant counters that full faith and credit does not compel this Court to apply the remedies or enforcement processes that might be available in the Texas court were it to address the enforcement or collection of a domestic Texas judgment.  She also argues that the specific remedy of a constructive trust was not sought in Martin's initial Texas petition, Adv. Doc. No. 115-9, but only arose in his Third Amended Petition, Adv. Doc. No. 115-11, filed on June 5, 2018, a year after the entry of order granting the request for terminating sanctions and default judgment, Adv. Doc. No. 115-10.  Defendant also observes that the Texas court did not specify precisely how much was misappropriated in relation to the Property from Alice or the Martin Estates, thus Defendant argues the Texas judgment does not support entry of a constructive trust which, she argues, is limited under Montana law to the amount derived from the misappropriation.  Martin rejoins by observing, *inter alia*, (a) that liberal tracing of misappropriated funds is sufficient to support entry of a constructive trust, and (b) that the initial petition's prayer included a request for "[a]ll such other and further relief at law or in equity" to which the Texas court deemed Martin entitled.  *See* Adv. Doc. No. 115-9 at 5.

### 3.    Constructive Trust

The Montana Supreme Court set forth the requirements for imposition of a constructive trust in *Bratton v. Sisters of Charity of Leavenworth Health System, Inc.*, 461 P.3d 127 (Mont. 2020):

> A constructive trust is a remedy for unjust enrichment and arises under statute "when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." Section 72-38-123, MCA; *Volk v. Goeser*, [367 P.3d 378 (Mont. 2016)]. Additionally, this Court "has broad discretion afforded by principles of equity to impose a constructive trust despite lack of any wrongdoing by the person holding the property." *Volk* [at 389, citing *N. Cheyenne Tribe v. Roman Catholic Church*, 296 P.3d 450 (Mont. 2013).] To succeed on a claim for unjust enrichment, in the context of a constructive trust, the plaintiff must prove three elements: "(1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value."

461 P.3d at 133–34.

Volk is instructive. Simplifying the facts to a degree, Roy Volk ("Roy") was married to Pamela Volk ("Pamela"). In 2010, Roy filed a petition seeking a divorce, and the Montana district court issued a restraining order, as mandated under Mont. Code Ann. § 40-4-121(3) (2009). That order restrained both the parties "from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability coverage held for the benefit of a party or a child of a party for whom support may be ordered." 367 P.3d at 384. The function of the statute is to maintain the status quo with respect to all property of the parties and to mitigate the potential harm caused by the dissolution process. *Id*. at 383–84. A change of beneficiary made in violation of such a restraining order is invalid. *Id*. at 384 (discussing *Briese v. Mont. Pub. Emps. Ret. Bd.*, 285 P.3d 550 (Mont. 2012)).

While under the restraining order, Roy changed the beneficiary on certain insurance policies from Pamela to his sister, Valerie. Roy then died unexpectedly at age 45. Because of the change in beneficiaries, Valerie received over $2.3 million in insurance proceeds. The district court ruled in favor of Valerie, and it rejected Pamela's contention that Valerie had been unjustly enriched and that a constructive trust should be imposed. *Id*. at 382–83. The Montana Supreme reversed those holdings on appeal.

*Volk* recognized that "[a] constructive trust serves as a proper remedy to unjust enrichment. 'A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.'" *Id*. at 388–89 (citing Mont. Code Ann. § 72-38-123, and *N. Cheyenne Tribe*, 296 P.3d at 455). The Montana Supreme Court also recognized a court's broad discretion to impose a constructive trust despite even a lack of wrongdoing by the party holding the property. *Volk*, 367 P.3d at 389–90; *N. Cheyenne Tribe*, 296 P.3d at 455 (noting that, following *In re Est. of McDermott*, 51 P.3d 486 (Mont. 2002), there was no longer a requirement that the defendant engage in any bad act or misconduct in order to prove a claim of unjust enrichment in the context of a constructive trust). Montana statute provides that "a constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." Mont. Code Ann. § 72-38-123.

The recognition of a constructive trust is not a matter of first impression. Issues of constructive trust have previously arisen in or in connection with Montana bankruptcy

cases.  For example, in *Torgenrud v. Smith (In re Agnew)*, Adv. No. 04-00103, (hereafter "*Agnew*"), this Court faced multiple issues.[24]  Smith had a romantic relationship with the debtor, Agnew, prior to his bankruptcy.  Though she and Agnew never married, they acquired certain Montana real property together using significant assets of Smith, with the idea that they would improve and sell it for a profit.  Agnew persuaded Smith to transfer the property into his name for "tax advantages," to which Smith agreed based on Agnew's written promise to sell the property, reimburse Smith, and split the profits.  Agnew refused to perform, and subsequently he admitted he had no intention of performing when he signed their agreement.  After Agnew refused Smith's request for rescission and refused to transfer title, Smith executed and filed a lien against the property.

Smith sued Agnew in Montana state court to quiet title and to recover damages for fraud, constructive fraud, deceit, and breach of contract.  Another count sought a constructive trust based on Agnew's breach of an equitable duty.  The state court held for Smith, awarding a total of approximately $467,000 in damages.  Agnew recorded a declaration of homestead two months after that judgment and, a month thereafter, filed a chapter 13 petition claiming a homestead exemption.  Smith objected to the exemption, and the parties filed various other motions against the other.

---

[24]  The Court's decisions and rulings in *Agnew* are not reported.  The Court has taken notice of its files and records in Adv. No. 04-00103 and draws the following from the Orders at Adv. Doc. Nos. 109 and 110.

MEMORANDUM OF DECISION - 32

An adversary proceeding was commenced by Agnew against Smith to avoid her judicial lien as a preference under § 547(b).  The motions in the underlying bankruptcy case were consolidated into that adversary proceeding by stipulation and order.  Smith's answer alleged actual fraud and constructive fraud by Agnew and asserted a right to equitable relief based on unjust enrichment and imposition of a constructive trust on the property.

Following a flurry of additional motions and filings, Agnew converted his chapter 13 case to chapter 7, and Torgenrud was appointed trustee.  The chapter 7 trustee sued Smith to avoid her judgment lien as a preferential transfer and raised several arguments opposing recognition of a constructive trust in favor of Smith.  *Id*. at 10–11.  The Court rejected the trustee's arguments and determined that:

> Several circuit courts, including the Ninth Circuit, have concluded that under § 541(b) property that a debtor holds prepetition in a constructive trust does not enter the estate.  *In re Lucas*, 300 B.R. 526, 533 (10th Cir. BAP 2003); *Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 926 (10th Cir. 2001); *see also Poss v. Morris (In re Morris)*, 260 F.3d 654, 670 (6th Cir. 2001); *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 295 (9th Cir. 1997); *Official Comm. Of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. (In re Columbia Gas Sys.)*, 997 F.2d 1039, 1059 (3d Cir. 1993).

*Id*. at 14–15.  The Court specifically noted the following from *Advent Mgmt. Corp.*:

> Under § 541(d) of the Bankruptcy Code, "property of the estate" includes all property in which the debtor has legal title except "to the extent of an equitable interest in such property that the debtor does not hold."  11 U.S.C. § 541(d) (West 1993).

> In the case of funds held by a debtor in constructive trust for another person, the equitable interest in the trust funds belongs to the trust beneficiary, not the debtor.  Accordingly, this court held in *Unicom* that funds held by a debtor in constructive trust are neither "property of the estate" under § 541(d), nor "an interest of the debtor in property" under § 541(b). [*Mitsui*

> *Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994).]
>
> *In re Advent Mgmt. Corp.*, 104 F.3d at 293.  Thus, Ninth Circuit law is no bar to the imposition of a constructive trust.

*Id*. at 15.

The Court found that the Montana state court did not grant or deny Smith's constructive trust claim, but that "otherwise the Findings and Conclusions and Judgment reflect an almost total victory for Smith" including substantial damages.  *Id*. at 18.  The absence of a clear determination of the constructive trust claim in state court meant that there was no bar on her assertion of such claims in the adversary proceeding.  *Id*. at 18–19.

The Court noted that imposition of a constructive trust is provided for under the Montana Code.  Moreover, the Court cited *United States v. Nava*, 404 F.3d 1119, 1130–31 (9th Cir. 2005), and found "more than enough evidence of fraud, wrongful acts, and unjust enrichment if Agnew were allowed to retain the title to impose a constructive trust."  *Id*. at 22.  And: "Under the evidence as shown in this record, a conclusion that a constructive trust arose is appropriate.  Even if the established fraud and wrongful acts arising from the state court decision did not exist, the record of established facts reflecting unjust enrichment is more than sufficient to impose a constructive trust in this case."  *Id*. at 23.[25]

---

[25]  The Court also held:

One final result of the imposition of a constructive trust involves the objections to Agnew's claimed homestead exemptions in the subject property, filed by Smith and the Plaintiff. The law in the Ninth Circuit and other circuits, cited above in *In re Advent Mgmt. Corp.*,

The bankruptcy court decision was affirmed on appeal by the District Court for the

District of Montana, stating:

> As Judge Kirscher ruled in his Order, Ninth Circuit case law precludes the inclusion of property held in constructive trust as an interest of the debtor or as property of the estate. *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994); *Taylor Associates v. Diamant (In re Advent. Management Corp.)*, 104 F.3d 293, 295 (9th Cir 1997).  I find the imposition of the constructive trust valid as both Montana law and Ninth Circuit case law support the formation of the constructive trust where as here, Agnew defrauded Smith of the property.  As Judge Kirscher found, *the trust existed as a matter of law from the point in time when Agnew defrauded Smith.  See* Mont. Code Ann. § 72-33-219; *Mitsui*, 13 F.3d 321; *United States v. $4,224,958.47*, 392 F.3d 1002, 1004 (9th Cir. 2004).

*Torgenrud v. Agnew (In re Agnew)*, 2006 WL 8435936, *2 (D. Mont. Aug. 31, 2006)

(emphasis added).

*Agnew* imposed a constructive trust post-petition.  There is authority to the effect

that a constructive trust is a remedy which cannot affect rights in the *res* until it is

imposed.  *See*, *e.g.*, *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172

---

104 F.3d at 293, is that assets held by a debtor in constructive trust are neither "property of the estate" under § 541(d) nor "an interest of the debtor in property" under § 547(b) [*sic*, § 541(b)].  . . .  Agnew claimed his homestead exemption pursuant to 11 U.S.C. § 522(b) and applicable state law, but § 522 authorizes a debtor to exempt "from property of the estate."  The subject property impressed herein with a constructive trust is necessarily not property of the estate, and thus not subject to Agnew's claim of homestead exemption under § 522(b) or applicable state law.  In one sense the objections are therefore moot, but to eliminate any doubt and unnecessary delay Smith's and the Trustee's objections to Agnew's homestead exemption will be sustained and the Debtor's claimed homestead exemption disallowed.

*Id.* at 24.  The "Judgment" of the Court, Adv. Doc. No. 04-00103 at Adv. Doc. No. 110 (Nov. 15, 2005), therefore ordered that "a constructive trust is impressed in Smith's favor as beneficiary, against certain real property listed in the Debtor Agnew's Schedule A . . . and the Plaintiff/Trustee and Agnew both are enjoined from taking any action with respect to the [ ] property while it is impressed with said constructive trust." *Id.* at 2.  The Court then further ordered "Agnew's claim of homestead exemption in the above-described real property shall be disallowed by separate Order . . . sustaining the Trustee's and Smith's objections to homestead exemption[.]" *Id.* at 3.

B.R. 638, 642 (9th Cir. BAP 1994) ("[A] constructive trust is a remedy which is inchoate prior to its imposition. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985).").  But while the remedy here is identified and imposed post-petition, it is fundamentally a declaration of the nature of and interests in the Property as of the commencement of Defendant's bankruptcy case.  Such is the result of a declaratory judgment recognizing the unjust enrichment and constructive trust.  *See Marcus v. Horton (In re Horton)*, 2020 WL 3637881, *3–5 (Bankr. D. N.M. June 26, 2020) (*citing* Andrew Kull, Restitution in Bankruptcy: Reclamation and Constructive Trust, 72 Am. Bankr. L. J. 265, 277–82 (1998)) (concluding that "The Hortons argue that, for a constructive trust to be effective in a bankruptcy case, it must have been recognized pre-petition; post-petition recognition is ineffective.  This argument must be overruled; a constructive trust arises on the date of the wrongful transfer, not the date a court recognizes it. . . .. Whether a constructive trust is recognized pre- or post-petition is immaterial[;]" and recognizing the operation of § 541(d) of the Code and critiquing arguments that constructive trusts in bankruptcy should not be recognized on the basis that they are "anathema to the equities of bankruptcy" or would improperly prefer constructive trust beneficiaries over other creditors).

The nature of that interest as of the date of the bankruptcy filing is subject to § 541(d) of the Code.  The Ninth Circuit has held:

> While the Bankruptcy Code does not define "an interest of the debtor in property," the United States Supreme Court has interpreted the term to mean "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Beiger v. I.R.S.*, 496 U.S. 53, 58, 110 S. Ct. 2258, 2263, 110 L. Ed. 2d 46 (1990).

MEMORANDUM OF DECISION - 36

> Under § 541(d) of the Bankruptcy Code, "property of the estate" includes all property in which the debtor has legal title except "to the extent of an equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (West 1993).
>
> In the case of funds held by a debtor in constructive trust for another person, the equitable interest in the trust funds belongs to the trust beneficiary, not the debtor. Accordingly, this court held in *Unicom* that funds held by a debtor in constructive trust are neither "property of the estate" under § 541(d), nor "an interest of the debtor in property" under § 547(b) [*sic* § 541(b)].

*Advent Mgmt. Corp.*, 104 F.3d at 295 (citing *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994)).

Here, Defendant's conduct fits squarely within the decisional law in Montana as recognized and discussed by this Court and the District Court in *Agnew*. The decision of the Texas court, which is entitled to full faith and credit and issue preclusive effect, established that Defendant misappropriated monies of Alice Jean Martin both while holding power of attorney and, later, while administering the Estates. In violation of her fiduciary duties, Defendant used funds to pay lawyers to assist her in eliminating liens on the Property. The taking and use of funds for personal benefit is wrongful, and retention of such benefit would be and is an unjust enrichment. Therefore, grounds exist for a declaratory judgment and the imposition of a constructive trust to the extent the record demonstrates the misappropriated funds were used to unjustly enrich Defendant through her Property.[26] However, due to issues as to the amount of the misappropriated funds used or invested in the Property, the Court cannot enter summary judgment at this time.

---

[26] While the request for imposition of a constructive trust is brought by Gary Martin, the Texas court found that any other heirs of Alice Jean Martin or the Alice Jean and Billy Martin Estates would

Given the Texas court's FF/CL, it would be inequitable for Defendant to retain any interest in the Property attributable to funds fraudulently obtained or misappropriated from Alice's account.  However, Defendant is correct that the Texas court's FF/CL did not make specific findings as to the amount of those funds, only a recognition that some of the funds Defendant took were used to improve, maintain or dispose of liens on the Property and that a constructive trust should be imposed related to any such funds.  Adv. Doc. No. 115-13 at 12–13 (concluding that "it would be inequitable for the Defendant to retain any portion of her claimed homestead exemption *that resulted from* her misappropriation of funds") (emphasis added).

Ordinarily in order to impose a constructive trust, strict tracing rules apply, and a plaintiff bears the burden to trace the alleged trust property "specifically and directly" back to the illegal transfers.  *See, e.g., Advent Mgmt. Corp.*, 104 F.3d at 296.  However, as Plaintiff correctly argues, a liberal tracing rule may apply depending on the facts of the case.  The Ninth Circuit BAP has recognized that "it is not an abuse of discretion to allow liberal tracing when no creditors will be harmed."  *Goldberg v. Bank of Alex Brown (In re Goldberg)*, 168 B.R. 382, 385 (9th Cir. BAP 1994); *see also Green v. Weinstein (In re Green)*, 2017 WL 957151, *8 (9th Cir. BAP March 20, 2017) (determining that dollar for dollar tracing was not required and affirming a more likely than not standard in imposing a constructive trust in the face of theft by a trust beneficiary).  Here, a constructive trust on the homestead funds will not harm any other creditors, and the equities, as found by

---

likewise have been injured.  Therefore, any constructive trust will be imposed for the benefit of all such parties.

the Texas court, would allow for such a liberal tracing approach.  But a liberal tracing

standard on this record would require the Court to make inferences.  Such inferences may

not be drawn in Plaintiff's favor at the summary judgment stage.  Therefore, the lack of

specificity regarding the transactions and the precise amounts either in the evidence

before the Court or in the Texas FF/CL, precludes the Court from imposing a

constructive trust under Plaintiff's summary judgment motion.

For example, Defendant's assertion that her payment to Defendant's Montana

attorneys, Datsopoulos, MacDonald & Lind, from Alice's account was related to a

possible move of Alice to Montana, was contradicted by one of the firm's attorneys under

oath.  While this Court would not normally weigh in on the credibility of such assertions

at the summary judgment stage, the Texas court's FF/CL specifically found that Debtor's

explanation of the purpose of those payments was a "false statement" and one of the

many examples of her providing false, misleading and inaccurate information.  Thus, for

the purposes of summary judgment, given the testimony of Defendant's Montana counsel

and the preclusive effect of the Texas FF/CL, those funds were used for representation in

the LPLS matter and removal of the LPLS lien on the Property.  Given the preclusion

principles, a constructive trust for that amount would be appropriate.  However, beyond

the assertion that the three payments amounted to "almost $9,000," *see* Adv. Doc. No.

115-38 at 3, the parties did not provide the exact amount involved.

In addition, the Court recognizes that Defendant deposited a $60,000 check

written to herself on Alice's account on February 12, 2011, and then issued a $50,000

check two months later to resolve the construction lien dispute with LPLS.  In addition,

MEMORANDUM OF DECISION - 39

Defendant wrote a $65,000 check on Alice's account on July 27, 2012, deposited those funds in her own account, and that same day wrote a $80,000 check to her ex-husband to satisfy a judgment lien against the Property. While the timing of these deposits and withdrawals may support a finding that those misappropriated funds were also utilized to create or maintain Debtor's interest in the Property, Plaintiff did not provide account balances, account transaction histories, or any other evidence to allow the Court to strictly trace the misappropriated funds, and drawing inferences from the current facts to allow liberal tracing is inappropriate at the summary judgment stage.

Under the present record, Defendant obtained a benefit by taking funds while acting as a fiduciary for Alice and applying some amount of those funds toward her Property; she had knowledge and appreciation of that benefit she obtained; and the acceptance or retention of that benefit would be inequitable without payment of its value. Given the active wrongdoing by Defendant here, as found by the Texas court, and giving—as explained above—full faith and credit to the Texas decision, the imposition of a constructive trust in order to prevent unjust enrichment is warranted, though the amount of such a constructive trust must be established through evidence.

The Court therefore finds and concludes that the motion for summary judgment will be granted in part as the funds remaining from the sale of the Property shall be impressed with a constructive trust to the benefit of Martin and any other heirs of Alice Jean Martin and/or the Estates of Alice Jean Martin and Billy Martin. However, the amount of such trust must be established at trial. Further, the Court finds and concludes that by virtue of the existence of such a trust, arising effective as of the time of the

misappropriations and misconduct by Defendant, the equitable interests of the trust beneficiaries removes such funds from property of the estate by reason of § 541(d) of the Code. Such funds shall not be administered and Defendant's asserted homestead exemption in the Property will be denied to that extent.

**CONCLUSION**

Based on the Court's decision as articulated above, the Texas court's findings of fact and conclusions of law are entitled to preclusive effect. After reviewing those findings and conclusions and the undisputed facts presently before the Court, an order will be entered granting Plaintiff's motion for summary judgment in part in Adv. No. 16-00032 at Adv. Doc. No. 49, ordering entry of partial judgment in favor of Plaintiff declaring the debt owed to Plaintiff nondischargeable under § 523(a)(4), and denying it in part as to the § 727 cause of action. And an order will be entered granting Plaintiff's motion of summary judgment in part in Adv. No. 16-00009 at Adv. Doc. No. 112, declaring a constructive trust to the benefit of Martin and any other heirs of Alice Jean Martin and/or the Estates of Alice Jean Martin and Billy Martin to be appropriate, with the amount thereof to be established at trial, and the homestead to be denied as to that amount as it would not be property of the estate.

DATED: July 30, 2020

_____
TERRY L. MYERS
U.S. BANKRUPTCY JUDGE